IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   12-cv-00671-WYD-MJW

KENDRA G. MORROW;
HILDA P. RODRIGO; and
CAROLINE SARVER,

Plaintiffs,

v.

BANK OF AMERICA, a national association,

Defendant.

---

**RECOMMENDATION ON
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
(DOCKET NO. 11)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This matter was before the court for a hearing on August 29, 2012 for Plaintiffs'

Motion for Default Judgment (Docket No. 11).  The court has reviewed the subject

motion and the exhibits attached thereto.  Defendant Bank of America ("BoA") has not

filed any response to the subject motion.  In addition, the court has taken judicial notice

of the court file and has considered applicable Federal Rules of Civil Procedure and

case law.  Furthermore, the court has considered the testimony and credibility of

plaintiffs Kendra Morrow, Hilda Rodrigo, and Caroline Sarver.  The court has also

considered plaintiffs' exhibits 1-23 which were admitted into evidence at the August 29,

2012 hearing.  The court now being fully informed makes the following findings of fact,

conclusions of law, and recommendation.

2

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The court finds:

1.	That the court has jurisdiction over the subject matter and over the parties to this lawsuit;

2.	That venue is proper in the state and District of Colorado;

3.	That each party has been given fair and adequate opportunity to be heard;

4.	That a hearing was held on Plaintiffs' Motion for Default Judgment (Docket No. 11) before Magistrate Judge Watanabe on August 29, 2012, consistent with Venable v. Haislip, 721 F.2d 297, 300 (10th Cir. 1983) and Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985);

5.	That BoA failed to appear for this hearing;

6.	That BoA was served with a copy of the summons and complaint on March 20, 2012.  See Docket No. 6.  BoA has failed to answer or otherwise respond to the complaint, and therefore BoA has admitted the factual allegations in the complaint.  See Burlington Northern R.R. Co. v. Huddleston, 94 F.3d 1413, 1415 (10th Cir. 1996);

7.	That the Clerk of the Court entered a Clerk's default pursuant to Fed. R. Civ. P. 55(a) against BoA on April 16, 2012.  See Docket No. 10;

8.	That BoA is not an infant or incompetent, an officer or agent of the State or Colorado, or in the military service;

9.	That per the subject motion, Plaintiff Morrow seeks a total of $330,000 in damages: $10,000 in statutory damages pursuant to the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1694 et seq., $80,000 in actual damages

pursuant to the ECOA, and $240,000 ($80,000 trebled) in actual damages

pursuant to the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 et

seq;

10.    That per the subject motion, Plaintiff Rodrigo seeks a total of $170,000 in

damages: $10,000 in statutory damages pursuant to the ECOA, $40,000 in

actual damages pursuant to the ECOA, and $120,000 ($40,000 trebled) in actual

damages pursuant to the CCPA;

11.    That per the subject motion, Plaintiff Sarver seeks a total of $170,000 in

damages: $10,000 in statutory damages pursuant to the ECOA, $40,000 in

actual damages pursuant to the ECOA, and $120,000 ($40,000 trebled) in actual

damages pursuant to the CCPA;

12.    That under the ECOA, "[w]ithin thirty days . . . after the receipt of a completed

application for credit, a creditor shall notify the applicant of its action on the

application." 15 U.S.C. § 1691(d)(1).  ECOA violations are subject to civil liability

wherein a plaintiff may recover actual damages, statutory damages up to

$10,000, and attorney's fees and costs.  15 U.S.C. § 1691e.  In determining the

amount of statutory damages, the court shall consider, "among other relevant

factors, the amount of any actual damages awarded, the frequency and

persistence of failures of compliance by the creditor, the resources of the

creditor, the number of persons adversely affected, and the extent to which the

creditor's failure of compliance was intentional."  15 U.S.C. § 1691e(b);

13.    That to establish a private claim under the CCPA, the "plaintiff must show: (1)

that the defendant engaged in an unfair or deceptive trade practice; (2) that the

4

challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused plaintiff's injury." Rhino Linings USA, Inc. v. Rocky Mountain Rhino Linings, Inc., 62 P.3d 142, 146-47 (Colo. 2003).  CCPA violators are subject to actual damages, including treble actual damages if there was bad faith conduct on the part of the violator, together with attorney's fees and costs.  § 6-1-113(2), C.R.S.;

14.    That after applying for the Making Home Affordable Program ("HAMP") through BoA, each plaintiff failed to receive notice of BoA's action on their applications within the required thirty day period.  However, each plaintiff continued to pay the lower quoted HAMP monthly mortgage payments.  Indeed, each time plaintiffs made their monthly mortgage payments, BoA would in almost every case quote the lower HAMP mortgage payment amount and not the original higher monthly mortgage payment amount.  By essentially "stringing" plaintiffs along for a year or longer, BoA caused a large arrearage for each plaintiff.  Eventually, each plaintiff found out their HAMP applications had been denied when BoA filed C.R.C.P. 120 foreclosure cases against each plaintiff.  Plaintiff Morrow learned of her foreclosure approximately twenty-two months after she submitted her HAMP application.  Plaintiff Rodrigo learned of her foreclosure approximately seventeen months after she submitted her HAMP application.  Plaintiff Sarver learned of her foreclosure approximately thirteen months after she submitted her HAMP

application.  By the time each plaintiff learned that their HAMP applications had been denied, and their property was being foreclosed on, each arrearage had grown so large that each plaintiff was unable to redeem;

15. That Plaintiff Morrow testified that her property was purchased in October 2004. Soon thereafter Plaintiff Morrow renovated the property and used it both as her primary residence and as a bed and breakfast business.  She further testified that the property was often utilized for fundraisers, weddings, and other events. Upon learning that her property was in foreclosure, Plaintiff Morrow eventually filed for bankruptcy in order to save her property.  Plaintiff Morrow testified that potential customers learned of her pending foreclosure and bankruptcy and were reluctant to do business with her, thus causing a loss in business revenue.  In addition, vendors that she used to support her business would no longer extend her credit and her insurance policies were not renewed.  She also testified that she spent thirty to forty hours per month dealing with BoA representatives on her HAMP application.  Plaintiff Morrow testified that she often had trouble sleeping and eating during the relevant time period.  Finally, Plaintiff Morrow testified that she would have been able to continue making her original monthly mortgage payments in full even without a HAMP monthly payment reduction;

16. That Plaintiff Sarver testified that her property was purchased in July 1999.  She further testified that as the result of her foreclosure, she lost her property. Between the time she filed her HAMP application and until the time her house was sold through foreclosure, Plaintiff Sarver spent twenty to twenty-fives hours per month dealing with BoA trying to get her HAMP application approved.

Further, Plaintiff Sarver testified that the process caused her to suffer headaches, lack of sleep, ulcers, high blood pressure, and depression.  Also in the middle of her foreclosure, Plaintiff Sarver lost her job and eventually had to move to Massachusetts to find employment.  Finally, Plaintiff Sarver testified that "she would have come up with a plan" and would have been able to continue making her full original mortgage payments even in the absence of a HAMP monthly payment reduction;

17.     That Plaintiff Rodrigo testified that her property was purchased in 2007.  She further testified that after learning her property was in foreclosure, she filed for bankruptcy to save her property.  Plaintiff Rodrigo testified that she spent time dealing with BoA trying to get her HAMP application approved, however she did not testify as to a specific amount of time she spent per month.  In addition, the litigation process caused a worsening of her migraine headaches, caused her to suffer acid reflux, and caused additional stress in her relationship with her boyfriend.  Finally, Plaintiff Rodrigo testified that she would not have been able to continue making her mortgage payments without a HAMP payment reduction;

18.     That BoA is liable under the ECOA.  BoA did not notify plaintiffs of a decision within the required thirty day period;

19.     That BoA is liable under the CCPA.  BoA engaged in an unfair business practice in the ordinary course of its business by not notifying plaintiffs of its decision regarding plaintiffs' HAMP applications until BoA began the C.R.C.P. 120 foreclosure proceedings for each plaintiff.  Further, BoA's policy in this regard has a significant public impact.  See Exhibit 1 to plaintiffs' Motion for Default

Judgment.  BoA's unfair practice caused injury in fact to plaintiffs.  Finally, treble damages are appropriate because BoA acted in bad faith by intentionally creating a false impression in plaintiffs' minds that their HAMP applications would eventually be approved, when all along BoA never really intended to approve the HAMP applications.  Instead, BoA used C.R.C.P. 120 to foreclose on plaintiffs' property knowing that plaintiffs could not redeem their property due to the high arrearage that BoA created by stringing plaintiffs along under the false impression that their HAMP applications would be approved.  Moreover, nothing prevented BoA from timely denying each of these three HAMP applications if BoA truly believed that plaintiffs' HAMP applications were incomplete.  However, the undisputed evidence shows otherwise;

20.   That a reasonable hourly rate for plaintiffs' time spent dealing with BoA is $15.00 per hour.  The reasonable time spent by Plaintiff Morrow dealing with BoA is 660 hours (30 hours per month for 22 months), for a total of $9,900.  Further, the reasonable business revenue lost by Plaintiff Morrow is $1,000 per month for 22 months, or $22,000.  The reasonable time spent by Plaintiff Sarver dealing with BoA is 325 hours (25 hours per month for 13 months), for a total of $4,875.  The reasonable time spent by Plaintiff Rodrigo is 170 hours (10 hours per month for 17 months), for a total of $2,550;

21.   That considering the relevant factors and evidence, Plaintiff Morrow suffered $10,000 in statutory damages and $31,900 in actual damages under the ECOA, and $95,700 ($31,900 trebled) in actual damages under the CCPA;

22.   That considering the relevant factors and evidence, Plaintiff Sarver suffered

$10,000 in statutory damages and $4,875 in actual damages under the ECOA, and $14,625 ($4,875 trebled) in actual damages under the CCPA.  The court notes that it does not find Plaintiff Sarver's loss of her job or move to Massachusetts to be connected to BoA's actions; and

23.     That considering the relevant factors and evidence, Plaintiff Rodrigo suffered $10,000 in statutory damages and $2,550 in actual damages under the ECOA, and $7,650 ($2,550 trebled) in actual damages under the CCPA.


## RECOMMENDATION

**WHEREFORE**, based upon these findings of fact and conclusions of law this court **RECOMMENDS**:

1.     That Plaintiffs' Motion for Default Judgment (Docket No. 11) be GRANTED;

2.     That default judgment enter in favor of Plaintiff Kendra Morrow and against Defendant Bank of America in the amount of $137,600.00, plus reasonable attorney's fees as later determined by the court and court costs to be taxed by the Clerk of the Court consistent with Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  Post-judgment interest shall accrue pursuant to 28 U.S.C. § 1961 from the date that judgment is entered by Chief Judge Daniel until the judgment is fully paid;

3.     That default judgment enter in favor of Plaintiff Caroline Sarver and against Defendant Bank of America in the amount of $29,500.00, plus reasonable attorney's fees as later determined by the court and court costs to be taxed by

the Clerk of the Court consistent with Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1.  Post-judgment interest shall accrue pursuant to 28

U.S.C. § 1961 from the date that judgment is entered by Chief Judge Daniel until

the judgment is fully paid;

4.      That default judgment enter in favor of Plaintiff Hilda Rodrigo and against

Defendant Bank of America in the amount of $20,200.00, plus reasonable

attorney's fees as later determined by the court and court costs to be taxed by

the Clerk of the Court consistent with Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1.  Post-judgment interest shall accrue pursuant to 28

U.S.C. § 1961 from the date that judgment is entered by Chief Judge Daniel until

the judgment is fully paid; and

5.      That plaintiffs shall be granted twenty-one (21) days from the date of judgment to

file an itemized affidavit for attorney's fees and costs incurred in the prosecution

of this matter.  Defendant shall have fourteen (14) days from the date plaintiffs

file their itemized affidavit to file any response.


**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),
the parties have fourteen (14) days after service of this recommendation to serve
and file specific written objections to the above recommendation with the District
Judge assigned to the case.  A party may respond to another party's objections
within fourteen (14) days after being served with a copy.  The District Judge need
not consider frivolous, conclusive, or general objections.  A party's failure to file
and serve such written, specific objections waives de novo review of the**

10

recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53

(1985), and also waives appellate review of both factual and legal questions.

<u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>,

91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  September 11, 2012          <u>s/ Michael J. Watanabe</u>
       Denver, Colorado          Michael J. Watanabe
                                 United States Magistrate Judge